UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| RACHEL E. WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> THE FAIR CREDIT LAW GROUP, LLC, <br><br> Defendant. | Case No.: 0:22-cv-62427-FAM <br><br> Honorable District Judge Moreno |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT FAIR CREDIT LAW GROUP'S MOTION TO
DISMISS AND/OR STRIKE COMPLAINT AS A SHAM PLEADING**

The Plaintiff RACHEL E. WILLIAMS ("Plaintiff"), by and through the undersigned, files this Memorandum In Opposition ("Plaintiff's Response") to Defendant Fair Credit Law Group's Motion to Dismiss And/Or Strike Complaint As A Sham Pleading ("Defendant's Motion"), and in support thereof, states as follows:

**I.      INTRODUCTION**

Defendant's Motion, seemingly brought pursuant to Fed. R. Civ. P. 12(b)(6), seeks dismissal of Plaintiff's claims under the Credit Repair Organization Act ("CROA"). Defendant's Motion makes a simple argument – it believes dismissal of Plaintiff's claims is appropriate, and that Plaintiff's claims are a "sham" and must be stricken, because Defendant's contract with Plaintiff attempts to disclaim the applicability of CROA to its business.

However, Defendant's Motion fails to consider the relevant standard applicable to the 12(b)(6) analysis, the broad definition of credit repair organization under the CROA, the nature of the alleged representations it made to Plaintiff, the inherent nature of its business, as well as the

1

way in which courts within the Eleventh Circuit (and across the country) have treated similar entities making similar representations. Rather than providing any legitimate basis for dismissal, Defendant's Motion only further illustrates the duplicitous and unlawful nature of its conduct.

Ironically, Defendant's argument, and efforts to resist the applicability of CROA to its business, represents one of the precise areas of concern addressed by Congress through its passage of the CROA. *See e.g.,* 15 U.S.C. § 1679f(b) ("Any attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter shall be treated as a violation of this subchapter"). Whether an entity is a credit repair organization involves an analysis into the way the services are represented, and the express or implied purpose of the services being represented. 15 U.S.C. § 1679a(3)(A).

As alleged in Plaintiff's Complaint, Defendant held out its services as having a beneficial impact on Plaintiff's credit – as its services were represented as being for the purpose of reducing Plaintiff's debt load which was impacting her credit, and getting debts which were impacting her credit to be "dismissed" so that Plaintiff would no longer be obligated to repay those debts. Reducing the debt load reflected on a consumer's credit report, as well as getting debts "dismissed" which would otherwise impact a consumer's credit, plainly constitutes a representation that Defendant's services were offered for both the explicit and implicit purpose of improving Plaintiff's credit. Defendant's subsequent efforts, in its contract with Plaintiff, executed *after* Defendant would have explained the beneficial nature of its services, is nothing more than a misguided effort to avoid the parameters and requirements of the laws applicable to the manner in which it represents its services to consumers.

Defendant's Motion fails to cite to a single case or piece of authority meaningfully discussing the issue, hanging its hat solely on the contract between the parties. However, as courts

2

within the Eleventh Circuit and across the country have found, entities like Defendant, who represent their services as reducing the debt load impacting a consumer's credit, qualify as credit repair organizations under the CROA, and efforts to disclaim this reality through contractual language have been repeatedly and soundly rejected.

Therefore, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

## II. LEGAL STANDARD

### a. 12(b)(6) Standard

Although Defendant does not specify the Federal Rules of Procedure under which it brings its Motion, Plaintiff assumes it to primarily be seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See, United Techs. Corp. v. Mazer,* 556 F.3d 1360, 1269 (11th Cir. 2009). Dismissal is only warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995).

### b. The CROA

The CROA is a broad, remedial statute, the passage of which expresses congressional intent "for courts to broadly construe its provisions in accordance with its remedial purpose," including favorably construing the statute "liberally in favor of consumers." 15 U.S.C. § 1679, *Stout v. FreeScore, LLC,* 743 F.3d 680, 684 (9th Cir. 2014); *Zimmerman v. Puccio,* 613 F.3d 60, 71 (1st Cir. 2010); *Day v. Persels & Assocs., LLC,* 2015 U.S. Dist. LEXIS 11447, at *46 (M.D. Fla. Jan. 30, 2015). The express purpose of the CROA is twofold: "to ensure that prospective buyers or the services of the credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. §§ 1679(b)(1)-(2).

The CROA is similarly "a strict liability statute; if a defendant is within the purview of the CROA and fails to comply with its requirements, the defendant is liable without any showing of negligence, willfulness, or other intent." *Hillis v. Equifax Consumer Servs.,* 237 F.R.D. 491, 506 (N.D. Ga. 2006).

### III.   LEGAL ARGUMENT

**A. Plaintiff Has Adequately Alleged Defendant's Status as a Credit Repair Organization**

Before addressing the flawed and futile nature of Defendant's reliance on its contractual disclaimers, it is important to understand the nature of Plaintiff's allegations and how courts within the Eleventh Circuit, and across the country, have treated similar allegations. As Plaintiff's well-plead facts illustrate, the nature of Defendant's services and alleged representations made regarding the nature of its services are such that Plaintiff has more than plausibly alleged Defendant's status as a credit repair organization under the CROA.

The CROA defines credit repair organization as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –
> (i) improving any consumer' credit record, credit history, or credit rating; or,
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) . . .

15 U.S.C. §§ 1679a(3)(A)(i)-(ii).

As this definition clarifies, and numerous courts have noted, a person need not actually attempt to improve a consumer's credit to qualify as a credit repair organization – they need only represent that they can or will provide such services. *Stout,* 743 at 686 ("A person need not actually attempt to improve a consumer's credit record, history, or rating in order to meet the statutory definition. Instead, an organization need only 'represent' that it can or will provide these services."); *Sannes v. Jeff Wyler Chevrolet, Inc.,* 1999 U.S. Dist. LEXIS 21748, at *2 (S.D. Ohio, March 31, 1999) (same).

Plaintiff's Complaint alleges that, prior to entering into any contract with Defendant, Defendant represented that its services, offered in connection with debts impacting Plaintiff's credit, included entering into negotiations to resolve debts for less than the balance owed, or to otherwise get Plaintiff's debts "dismissed" so that Plaintiff would not have to pay them back, and would enjoy the benefit of such debts no longer impacting her credit. [Dkt. 1, ¶ 9]. Plaintiff further alleges that Defendant represented its services would result in the improvement of Plaintiff's credit history in light of the impact its negotiation and legal services would have on the debts impacting her credit. [*Id.* at ¶ 10].

At the very least, the above well-plead facts are more than sufficient to bring Defendant within the broad definition of credit repair organization outlined under the CROA. Defendant is

alleged to have explicitly represented it would get debts impacting Plaintiff's credit "dismissed," which would inherently suggest to Plaintiff and consumers that an explicit (or at least implicit) purpose of Defendant's services was to improve her credit by removing any obligation for Plaintiff to repay debts that were impacting here credit. Similarly, the nature of Defendant's debt settlement services, in themselves and at the very least, suggests to consumers that the services offered will ultimately improve such consumers' credit.

The above reasoning has been adopted and outlined by multiple courts within the Eleventh Circuit and across the country. In *Reynolds v. Credit Solutions, Inc.,* 541 F. Supp. 2d 1248 (N.D. Ala. 2008), *vacated on other grounds, Picard v. Credit Solutions, Inc.,* 564 F.3d 1249 (11th Cir. 2009)*,* the defendant argued that "it should not be considered a credit repair organization because CROA was only designed to address abuses by companies that advertise themselves as being able to correct . . . credit reports, not companies, like itself, that merely promise to **settle debt."** *Id.* at 1254 (emphasis added). The court in *Reynolds* proceeded to engage in a well-reasoned analysis of the flawed nature of such argument and how it contravenes the broad definition of credit repair organization outlined in the CROA.

The court noted how the CROA's plain definition of credit repair organization is "extremely broad," and took issue with the suggestion that the CROA did not apply to a debt settlement company because their "activities are aimed at assisting consumers in developing creditworthy behavior and paying their debts, which may result in improved actual credit as a collateral consequence, rather than as a program objective." *Id.* (internal quotations omitted, emphasis in original). In rejecting this overly-limited conceptualization of the CROA, the Court summarized its analysis as follows:

> **Limiting CROA to those organizations whose primary purpose is credit improvement, as opposed to those who promise better**

> **credit as a collateral consequence of settling debt, has no basis in the language of § 1679a(3).**
>
> …
>
> By settling credit card debt, thereby affecting the debt load reflected on a consumer's credit report, [defendant's] service, if it works as promised, results in a consumer's credit report and credit score being altered and improved.
>
> …
>
> [E]ven if CROA was not drafted with debt settlements organizations specifically in mind, the plain meaning of its language includes the type of debt settlement services offered to [plaintiff] by [defendant].

*Id.* at 1255-56 (emphasis added). Accordingly, the *Reynolds* court found that the debt settlement company at issue constituted a credit repair organization, and denied the defendant's motion to dismiss. *Id.* at 1257, 1264. This well-reasoned analysis has been adopted and approved by numerous courts across the country, including the Ninth Circuit. *Stout,* 743 F.3d at 687-88.

Similarly, in *Day v. Persels,* the defendant made substantially the same argument as that made by the defendant in *Reynolds* – i.e., that the CROA does not apply to entities "that merely promise to settle debt". *Day,* 2015 U.S. Dist. LEXIS 11447 at *44-5. The court, much like the court in *Reynolds,* rejected that argument as running contrary to the plain language of the CROA. *Id.* at 45-47. *See also, Willis v. Debt Care, USA, Inc.,* 2011 U.S. Dist. LEXIS 153008 at *38 (D. Or. Oct. 24, 2011).

Further, in *Bilbao v. Pac. Insolvency All., LLC,* 2022 U.S. Dist. LEXIS 104559 (C.D. Cal. Feb. 4, 2022), the court noted the extent to which a company that offers debt settlement services, like Defendant, qualifies as a credit repair organization under the CROA. , The *Bilbao* court provided the following analysis of the issue:

> In *Stout,* the Ninth Circuit explicitly rejected the reasoning in [*Plattner*], which found that a debt reduction program was not a credit repair organization, and supported the reasoning in [*Reynolds*], where a debt settlement company was found to be a credit repair organization based on the plain language of the CROA. The Ninth Circuit commented that 'the plain language of the CROA

7

> is at odds' with decisions like *Plattner*, citing favorably to *Reynolds*. The Court finds that the same reasoning applies here: PIA, a debt settlement company, also qualifies as a [credit repair organization] based on Plaintiff's allegation that Defendant orally communicated that it could repair her credit in addition to reducing her debt and the plain language of the CROA.

*Bilbao,* 2022 U.S. Dist. LEXIS 104559 at *9.

As suggested by the numerous decisions outlined above, a company that offers to provide debt settlement services, where a collateral consequence would be the improvement of a consumer's credit, constitutes a credit repair organization under the CROA. Defendant's debt settlement services, as alleged by Plaintiff, fall squarely within these parameters. In fact, Defendant's offered services go even further than the opinions and authority outlined above, given its further representation that it would get debts impacting Plaintiff's credit "dismissed," clearly suggesting that its services were designed to negate the impact certain debts were having on her credit.

When taking Plaintiff's allegations regarding the way in which Defendant represents its services as true, and drawing all reasonable inferences in Plaintiff's favor, the Court should conclude that Plaintiff has more than plausibly alleged Defendant's status as a credit repair organization under the CROA. Defendant's reliance on its disclaimers contradicting the nature of its representations cannot carry the day. The Court should instead follow the sound reasoning of *Stout, Reynolds, Day, Willis,* and *Bilbao* discussed above.

Therefore, Plaintiff prays that the Court find that Plaintiff has sufficiently alleged Defendant's status as a credit repair organization to survive Defendant's feeble attack under Rule 12(b)(6), and deny Defendant's Motion accordingly.

### B. Defendant's Contractual Disclaimers Do Not Warrant Dismissal Of Plaintiff's Claims

Turning to the only argument set forth in Defendant's Motion, the Court should reject Defendant's attempted reliance on its contractual language and disclaimers as an effort to avoid liability for its violations of law. Given the nature of Defendant's business, as well as the explicit way it is alleged to have represented its services, its "disclaimers" and contractual language are plainly at odds with and contradict the representations made to Plaintiff regarding the explicit and implicit purpose of its business. Defendant cannot have its cake and eat it too, and must answer to the laws applicable to the way in which it represents its services to consumers. Numerous courts have reached similar conclusions.

In *Bilbao,* the defendant attached to its motion to dismiss the contract between the parties that contained a disclaimer reading: "*your credit score will be negatively impacted*" through the offered services. *Bilbao,* 2022 U.S. Dist. LEXIS 104559, at *6-7. While more forceful than Defendant's "may" language, even this disclaimer was not sufficient to excuse the Defendant from the CROA claims at issue. This was because the nature of the alleged representations plainly contradicted the nature of the contractual disclaimers – a conclusion which applies with equal force to the instant matter. *Id.* at *7-9.

In *Stout,* the Ninth Circuit noted how "[t]he fact that FreeScore has a self-serving disclaimer that it is not a credit repair organization does not cure the representations it made that it offers services that could improve a consumer's credit." *Stout,* 743 F.3d at 686, n.1. In much the same way, Defendant's attempt to disclaim its status as a credit repair organization through contractual language does not cure its explicit and implicit representations to help consumers settle debts, have debts impacting their credit dismissed, and enjoy improved credit as a result of such services. *See also, Zimmerman v. Puccio,* 613 F.3d 60, 72 (1st Cir. 2010) ("Apparently, the Puccios believe that a company could represent repeatedly in advertisements, on its website, and in its

employee scripts, that it would help improve clients' credit ratings, but escape liability under CROA by inserting a disclaimer in its contract about the relevance of its services to the credit rating of its clients. **That is an implausible position which captures the duplicity of the Puccios' enterprises**") (emphasis added).

Simply put, Defendant cannot seek to benefit from holding itself out as providing consumers with services directed towards improving their credit in order to induce consumers to use its services, yet simultaneously attempt to disclaim the statutes applicable to its business through contractual language and disclaimers. Defendant's belief that it could, and suggestion to the Court that such conduct would be proper, is the only "sham" aspect of this case. Defendant's conduct is plainly at odds with the broad, remedial purpose of the CROA, and illustrates Defendant's attempts to get consumers to waive the protections afforded under the CROA, - itself constituting a violation of the CROA. 15 U.S.C. § 1679f(b).

Therefore, the Court should reject Defendant's feeble and misguided argument, and deny Defendant's Motion accordingly.

### C. Whether An Entity Is A Credit Repair Organization Is A Fact-Intensive Inquiry Generally Inappropriate For Resolution At The Motion To Dismiss Stage

In addition to the foregoing, the fact-intensive nature of the inquiry into whether an entity is a credit repair organization further counsels in favor of denying Defendant's Motion. As numerous courts have noted, this inquiry is generally inappropriate at the motion to dismiss stage. *See e.g., Kennedy v. CompuCredit Holdings Corp.,* 9 F. Supp. 3d 1314, 1321 (M.D. Fla. 2014) ("The Court agrees with Plaintiff that she has plausibly alleged that Defendants qualify as Credit Repair Organizations and, further, the actual determination on this point is fact-intensive and not suitable for the motion to dismiss stage."). Even if the Court were to lend credence to Defendant's

contractual disclaimers, the fact-intensive nature of the inquiry presented by this case must proceed through discovery.

## IV.     CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. Plaintiff has more than sufficiently alleged Defendant's status as a credit repair organization, and Defendant's efforts to avoid that reality by pointing to its contractual disclaimers is wholly without merit. If Defendant's position were accepted, entities that represent their services as improving consumers' credit would be able to contract around and avoid liability for the federal laws applicable to such representations merely by including contradictory disclaimers in their contracts. The Court cannot allow such untoward result.

Dated: February 2, 2023                                          Respectfully submitted,

/s/ Franklin A. Jara
Franklin A. Jara, Esq.
Florida Bar No. 636681
Sulaiman Law Group, Ltd.
2500 South Highland Avenue Ste 200
Lombard, IL 60148
Phone :(312) 313-1613
Fax: (630) 575-8188
fjara@sulaimanlaw.com

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Plaintiff, certifies that on February 2, 2023, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,** to be served electronically via CM/ECF system on: all counsel of record.

s/Franklin A. Jara
Counsel for Plaintiff
